IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2814-N |
| | § | |
| BEACON HILL STAFFING GROUP, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendants Beacon Hill Staffing Group, LLC ("Beacon Hill"), Shawna Bestreich, and Andrew Wang's respective motions to dismiss [36, 37, 38]. The Court defers to the first-filed court on Bestreich's motion, denies Wang's motion to dismiss for lack of personal jurisdiction, and grants in part the Rule 12(b)(6) motions.

## I. BACKGROUND

### *A. The Staffing Business*

Plaintiffs Randstad General Partner (US), LLC and Randstad Technologies, LLC (collectively, "Randstad") and Beacon Hill are competitors in the staffing industry.[1] The staffing industry involves three-sided transactions. A prospective employer ("Customer") desires to hire an employee with particular skills for a position, either temporary or permanent. A prospective employee ("Talent") matches the desired requirements. A

[1] The factual background is taken largely from Randstad's Amended Complaint. [34]

staffing company brings the two together. If the match is successful, i.e., the Customer hires the Talent, then the staffing company earns a fee. The arrangement between the staffing company and the Customer appears to be variable and, on this record, largely unclear.

It appears that staffing company front-line employees work in geographic proximity to their prospective Customers, and they may specialize in particular industries or types of employment. It also appears it is common for staffing company employees to develop ties with their Customers. In order to prevent departing staffing company employees from appropriating this goodwill developed on the nickel of the staffing company, it appears common in the industry for staffing companies to require their employees to enter into covenants not to compete and covenants not to solicit fellow employees to join them at a new competing employer. ("Restrictive Covenants") In order to avoid potential interference with those Restrictive Covenants, it is common in the industry for prospective staffing company employer to inquire of prospective employees whether the employees are subject to Restrictive Covenants.

Randstad is apparently a relatively large staffing company. It has thousands of employees and multiple offices, including one in the Dallas area. Randstad requires its employees to enter into Restrictive Covenants.

According to Randstad, Beacon Hill are the Pirates of the Caribbean of the staffing industry and CEO Wang is their Captain Jack Sparrow. Beacon Hill's alleged business model for growth is to poach other staffing company employees and, by virtue of their customer contacts, poach the other staffing company's Customers. This business model

would fail if Beacon Hill would not interfere with Restrictive Covenants. Accordingly, Beacon Hill does not inquire of potential poaching targets whether they are subject to Restrictive Covenants. If necessary, Beacon Hill agrees up front to bear any litigation expenses incurred by the prospective poachee. Consequently, Beacon Hill has been sued by multiple staffing companies from which it has poached employees. Needless to say, Beacon Hill denies these allegations and contends Randstad is simply trying to stifle a younger, more aggressive competitor.

### *B. The Georgia Litigation*

Bestreich was a Randstad employee in Randstad's Dallas location. In June 2018, Bestreich quit Randstad and went to Beacon Hill in Dallas. In March 2019, Randstad sued Beacon Hill, Bestreich, and Erik Adams in Georgia. *Randstad General Partner (US), LLC v. Beacon Hill Staffing Group LLC, et al.*, Cause No. 1:19-CV-1655-MHC (N.D. Ga.) (the "Georgia Case").[2] Randstad sued Beacon Hill for tortious interference with Bestreich and Adams's Restrictive Covenants and conspiracy and sued Bestreich for breach of her Restrictive Covenant and for tortious interference with Adams's Restrictive Covenant by recruiting Adams to Beacon Hill in mid-2018. Beacon Hill moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

During the course of the Georgia Case, Randstad learned that Beacon Hill and Bestreich had hired away Shauna Mooney in mid-2019 in Dallas. Randstad moved for leave to amend to assert a claim against Beacon Hill and Bestreich for hiring Mooney,

---

[2] Bestreich and Adams's Restrictive Covenants apparently contain a forum selection clause providing for venue in Georgia.

apparently along with claims regarding other former Randstad employees hired by Beacon Hill during the pendency of the Georgia Case. Bestreich opposed the motion for leave as untimely. While the motion for leave was pending, the court granted Beacon Hill's motion to dismiss for lack of personal jurisdiction. The Georgia court invited Randstad to amend its motion for leave in view of that ruling. Instead, Randstad withdrew its motion for leave and filed this action.

## II. The Georgia Court Gets First Crack at the First to File Issue

Bestreich argues that this Court should dismiss Randstad's claims against her under Rule 12(b)(3)[3] in favor of the earlier-filed Georgia Case.[4] She argues that the claims against her here are basically part of the same operative facts as the claims against her in Georgia. Randstad argues that the comparable claim in Georgia deals with Bestreich's alleged interference with Adams's Restrictive Covenant in mid-2018 whereas the claim in this case deals with Bestreich's alleged interference with Mooney's Restrictive Covenant in mid-2019. Randstad also argues that it is inconsistent for Bestreich to argue in Georgia that Randstad should not be given leave to amend to add Mooney claims and then argue in Texas that Randstad must bring those claims in Georgia.

Those are interesting arguments, but the parties are making them to the wrong court. "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving

[3] It is not clear that Rule 12(b)(3), relating to venue, is the appropriate vehicle to raise a first-filed argument, but the label is not especially important here.

[4] Bestreich argues in the alternative that the Court should transfer the claims against her to Georgia under 28 U.S.C. § 1404(a) or, in the further alternative, stay them.

substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). *Accord Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Oddly, Bestreich quotes this rule from *Save Power*, but then ignores it. The Eleventh Circuit also follows this rule, so deferring to the Georgia court would not place it in an awkward situation. *See, e.g.*, *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013) (citing *Mann Mfg.*).[5]

Accordingly, this Court should, and will, defer to the Georgia court to decide the first-filed arguments. The Court, therefore, denies Bestreich's motion to dismiss, transfer, or stay based on the first-filed doctrine, without prejudice. In view of this result, the Court will also defer ruling on Bestreich's motion to dismiss under Rule 12(b)(6).

## III. The Court Has Personal Jurisdiction over Wang

### *A. Legal Standard for Personal Jurisdiction*

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff has the burden of establishing personal jurisdiction by making out a *prima facie* case; proof by a preponderance is not required. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). "The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.

[5] This is not surprising or a coincidence. When the Eleventh Circuit was carved out of the former Fifth in 1981, one of the first things it did was to adopt former Fifth Circuit precedent handed down prior to close of business on September 30, 1981, as binding precedent for the then-new Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

1993). But when "a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Court, however, need not consider conclusory factual or jurisdictional allegations, even if uncontroverted. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

When considering specific jurisdiction in connection with a claim for tortious conduct, a single act by a defendant directed towards Texas that gives rise to a cause of action can support a finding of minimum contacts. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

Establishing jurisdiction is a two-part process. The court first decides whether the forum state's long-arm statute confers jurisdiction; and if it does, the court then determines whether the exercise of jurisdiction is consistent with due process. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir.1999). Because the Texas long-arm statute has been interpreted to extend personal jurisdiction to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Jones*, 954 F.2d at 1067-68*; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Federal constitutional due process requires a showing of two things: (1) the defendant must have purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he should

reasonably anticipate being haled into court there; and (2) that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Latshaw*, 167 F.3d at 211.

A defendant's "minimum contacts" with the forum may support either general or specific jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "General jurisdiction exists when a defendant□s contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id*. (internal citations omitted). However, where the Court "seeks to assert specific jurisdiction over an out-of-state defendant," the defendant must have "purposefully directed his activities at residents of the forum" and the litigation must "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted).

### *B. Wang's Tortious Actions Directed Toward Texas*

Wang filed a declaration in support of his motion to dismiss. *See* Consolidated Appendix at 3-6 [39] [hereinafter Wang Decl.]. No other evidence is before the Court in connection with that motion. Thus the record on which the Court must decide personal jurisdiction is the Wang Declaration, together with the uncontroverted allegations in the Amended Complaint [34]. The Wang Declaration establishes that he does not have contacts with Texas that would support general jurisdiction, and Randstad does not contest general jurisdiction. The Court will thus consider only specific jurisdiction.

Pertinent to specific jurisdiction, the Wang Declaration provides:

> As CEO of Beacon Hill, I rely on other Beacon Hill employees to make the hiring and staffing decisions for Beacon Hill's many offices throughout the country. I did not make the hiring decisions for Beacon Hill's

> Texas offices. While I will prepare an offer letter to an individual for potential hire, the content and terms of such an offer are determined and provided to me by other employees who make the hiring decision. Once the offer letter is prepared, I send it to the employee who requested the letter, with a copy to Beacon Hill's human resources and accounting departments. I do not sign the letter or send it to the new employee, that task is left to others. I did not sign or execute the offers [*sic*] letters prepared for Ms. Bestreich, Mr. Adams or Ms. Mooney or mail, deliver or send their offer letters to them.

Wang Decl. ¶ 17. Randstad alleges that Beacon Hill and Wang are aware that Randstad enters into Restrictive Covenants with its employees. *See, e.g.*, Amd. Compl. ¶ 94, 137, 185.

Randstad therefore makes a prima facie case that Wang prepared offer letters to Bestreich, Adams, and Mooney, knowing that they were in Texas and were subject to Restrictive Covenants, and sent the offers to Beacon Hill personnel in Texas to be signed and delivered, and which, if accepted, would cause Bestreich, Adams, and Mooney to breach their Restrictive Covenants with Randstad. That constitutes directing tortious activity into the State of Texas, and Randstad's claims against Wang arise out of that conduct. Thus, Wang has minimum contacts with the State of Texas sufficient to support the exercise of personal jurisdiction by this Court over Wang.[6]

Finally, once a plaintiff establishes minimum contacts between a defendant and the forum state, "it is rare to say the assertion [of jurisdiction] is unfair." *McFadin*, 587 F.3d at 759 (alteration in original) (quoting *Wien Air*, 195 F.3d at 215). Factors bearing on the inquiry are: (1) the burden on the nonresident defendant of litigating in the forum state; (2)

---

[6] This holding certainly does not amount to a finding that Wang actually did tortiously interfere, but merely that Randstad has made a prima facie showing.

the forum state's interest; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the administration of justice; and (5) the shared interest of the several states in furthering "fundamental social policies." *Id.* at 760 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)). While litigation in Texas certainly imposes a burden on Wang, the forum state has a strong interest in adjudicating this dispute. Moreover, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *McFadin*, 587 F.3d at 764 (quoting *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). Because Wang has not stated any objections other than a desire to avoid the general burden of litigation and its concomitant effects, the Court determines that the exercise of personal jurisdiction over Wang would not offend traditional notions of fair play and substantial justice. The Court therefore denies Wang's motion to dismiss for want of personal jurisdiction.

## IV. RANDSTAD FAILS TO ALLEGE FACTS SHOWING INTERFERENCE OR DAMAGES

### *A. Rule 12(b)(6)*

When deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the claim or element. *Id.* at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted). To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

As the Supreme Court observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged  but it has not "show[n]" "that the pleader is entitled to relief." FED. RULE CIV. PROC. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).[7]

***B. Interference with Randstad's Customers***

In Counts IV and V of the Amended Complaint, Randstad alleges that Beacon Hill (Count IV) and Wang (Count V) interfered with Randstad's customers. *See* Amd. Compl. ¶¶ 194-208. The Amended Complaint alleges that "Beacon Hill caused Randstad customers to discontinue, to fail to enter, and/or to reduce their business with Randstad." Amd. Compl. ¶¶ 196, 204. First, the Amended Complaint is rather vague about the contractual relationship between Randstad and its Customers.[8] Without facts describing the nature of the agreement, it is hard to tell whether there is interference.

Second, Randstad is rather vague about its legal theory. Texas recognizes distinct torts of interference with existing contract[9] and interference with prospective business

[7] A court can consider limited matters outside the face of the pleading. *See, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Those other sources are not at issue in the instant motion.

[8] That may be because all of the parties are familiar with the industry, though this Court is not. It sounds as if perhaps these are more unilateral, rather than bilateral, agreements, i.e., if you bring me a new hire, I will pay you a commission. The Court should not have to speculate.

[9] The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Under Texas law, to prevail on a claim of intentional interference with contract, the plaintiff must prove an actual breach of some obligatory provision of a contract. *See WickFire L.L.C. v.*

relation[10] that have distinct elements.[11] It is not clear whether Randstad alleges interference with existing contract ("discontinue"), interference with prospective business relation ("fail to enter") or both.[12] Because the two torts have different elements it is hard for the Court to determine whether Randstad has stated a claim.

To the extent Randstad alleges interference with an existing contract, its pleading is deficient. First, it fails to identify any specific customer contract with which it contends a defendant interfered.[13] Second, it fails to allege facts showing the customer breached that contract. To the extent Randstad alleges interference with prospective business relations

---

*Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021) (citing *El Paso Healthcare System Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017)).

[10] The elements of a claim for tortious interference with prospective business relations under Texas law are: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *See, e.g.*, *Cooper v. Harvey*, 108 F. Supp. 2d 463, 471 (N.D. Tex. 2015).

"We therefore hold that to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

[11] "In reaching this conclusion we treat tortious interference with prospective business relations differently than tortious interference with contract." *Wal-Mart*, 52 S.W.3d at 727.

[12] The Court is uncertain where "reduce" fits in.

[13] "First, while [plaintiff] avers that it 'had valid contracts with certain customers,' it fails entirely to allege or designate a specific contract that is the subject of interference. . . . Without identifying an existing contract that is subject to interference, [plaintiff] has failed to plead adequately the first element of a tortious interference with contract claim." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774-75 (S.D. Tex. 2010).

it is likewise deficient. First, it fails to identify any prospective customers.[14] Second it fails to plead facts showing that a future business relation was reasonably probable.

The Court therefore dismisses Randstad's claims for interference with its customers in Counts IV and V.

### *C. Randstad's Damages Pleadings Are Conclusory*

Randstad's allegation of damages are conclusory: "As a direct and proximate result of Beacon Hill's actions described above, Randstad has suffered and continues to suffer irreparable harm and monetary damage." Amd. Compl. ¶ 193. This is exactly the "formulaic recitation of the elements of a cause of action [that] will not do." *Twombly*, 550 U.S. at 555. While Randstad need not plead a precise accounting at this stage, it must at least plead facts showing how the alleged interference damaged it. *See Ins. Safety Consultants LLC v. Nugent*, 2017 WL 735460, at *8 (N.D. Tex. 2017) (dismissing damages claim for lack of factual pleading). Did it lose profits from Customer business it would have obtained but for the interference? Was it something else? Neither the Court nor defendants are required to speculate. The Court therefore grants the motion to dismiss Randstad's damage allegations.

## CONCLUSION

The Court denies Bestreich's motion to dismiss or transfer without prejudice. The Court denies Wang's motion to dismiss for lack of personal jurisdiction. The Court grants

---

[14] *See M-I, supra*, 733 F. Supp. 2d at 775-76 (holding claim for tortious interference with prospective business relations deficient for similar reasons).

the motions to dismiss Counts IV and V and Randstad's damage allegations. The Court otherwise denies the motions to dismiss. The Court grants Randstad leave to amend within twenty-eight (28) days of the date of this Order.

Signed August 4, 2021.

David C. Godbey
United States District Judge