IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC and RANDSTAD TECHNOLOGIES, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | No. 3:20-cv-2814-N-BN |
| BEACON HILL STAFFING GROUP, LLC, SHAWNA BESTREICH, ANDREW WANG, and DOES 1-10, | § § § § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**[1]

Plaintiffs Randstad General Partner US, LLC and Randstad Technologies, LLC (together, "Randstad") have filed a Motion to Compel Against Defendant Andrew Wang [Dkt. No. 89] and a Motion to Compel Against Defendant Beacon Hill Staffing Group, LLC [Dkt. No. 91] (together, the "MTCs").

Randstad asks the Court to compel Wang and Beacon Hill to respond to Randstad's interrogatories and find that all objections have been waived, compel Wang and Beacon Hill to respond to Randstad's requests for production ("RFPs") and

---

[1] Under ' 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

find that all objections have been waived, and award Randstad its reasonable fees and costs incurred in connection with these MTCs.

The Court ordered expedited briefing on the MTCs, *see* Dkt. No. 94, but otherwise now DENIES, as unnecessary, Plaintiffs' Partially Unopposed Motion for Oral Argument [Dkt. No. 93]. And, for the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Against Defendant Andrew Wang [Dkt. No. 89] and Plaintiffs' Motion to Compel Against Defendant Beacon Hill Staffing Group, LLC [Dkt. No. 91].

## Background and Legal Standards

The parties are familiar with the background of this case, so the Court will not repeat it here and will instead focus on the background of disputed discovery requests and responses.

The Court has laid out the standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and the Court incorporates and will apply – but will not repeat – those standards here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86, 588-90 (N.D. Tex. 2018).

Under Federal Rule of Civil Procedure 26(b)(1) "and Fifth Circuit case law, discovery requests must seek information that is relevant to the parties' claims or defenses as pleaded and may not be used only to find new claims or defenses," but "there is a line between additional factual support for a cause of action pleaded as an existing claim and an entirely new or independent factual basis for pleading a cause

of action – the latter of which would generally count as a new claim for Rule 26(b)(1)'s purposes." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 292 (N.D. Tex. 2017). And "'[d]iscovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery." *Id.* at 280 (quoting FED. R. CIV. P. 26, 2015 comm. note). "'The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves.'" *Id.* (quoting *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009)).

And "the Court will not engage in a preemptive merits analysis to determine whether [Plaintiff] is entitled to discovery on the claim that it has pleaded and is pursuing." *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-CV-2719-B, 2018 WL 3655574, at *16 (N.D. Tex. July 16, 2018). But a party cannot refuse to engage in – and should not be excused from being subjected to – discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail. *See Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) ("Similarly, a party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail. *See Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (even if a party 'presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief -- whether ultimately justified or not -- provides no basis for

avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure').").

## Analysis

## I.  <u>Alleged deficiencies in the MTCs</u>

Randstad's MTCs address the 30 RFPs and 13 interrogatories served on Beacon Hill and the 13 RFPs and 14 interrogatories served on Wang. *See* Dkt. No. 90; Dkt. No. 92.

Defendants assert that "this Court's consideration should be limited to those discovery requests specifically addressed in the Motion (i.e. Interrogatory Nos. 1-11, 13 and Request for Production Nos. 15-17, 25 to Beacon Hill and Interrogatory Numbers 2-14 and Request for Production Numbers 7 and 8 to Wang]) as Plaintiffs' discussion of Beacon Hill's [and Wang's] alleged 'common deficiencies' in its discovery responses and Plaintiffs' assertion that the scope of the case is nationwide does not satisfy Plaintiffs' discovery dispute obligations, including the obligation to confer in good faith." Dkt. No. 99 at 11; Dkt. No. 101 at 11.

The Court does not agree that the MTCs are due to be denied generally for failing to adequately confer in advance of filing or failing to specifically address the requests or objections at issue. Even if Randstad failed to confer on certain issues, the Court will excuse strict compliance where, although "the Court will not presume that a conference will be unproductive and a waste of time simply because the parties have a bitter history and an apparent inability to get along well," here, it appears that, on the critical scope issue, conferring further would "neither have

-4-

eliminated nor narrowed the parties' dispute," and the Court believes that "further delay in addressing the [MTCs] would not comport with the overriding principle set forth in Fed. R. Civ. P. 1." *Brown v. Bridges*, No. 12-cv-4947-P, 2015 WL 11121361, at *5 (N.D. Tex. Jan. 30, 2015), *on reconsideration in part*, No. 12-cv-4947-P, 2015 WL 12532137 (N.D. Tex. June 22, 2015). But the Court will address any deficiencies as to specific interrogatories or RFPs or objections in the discussion that follows.

## II.   The scope of the case and the scope of discovery

The parties have a fundamental disagreement regarding the scope of Randstad's claims and, therefore, regarding the proper scope of discovery.

The Court previously ordered the parties to file briefs on their views on "whether the scope of this case should be limited to the State of Texas." Dkt. No. 41 at 1. The Court has not yet expressly resolved that issue based on the parties' briefing. *See* Dkt. Nos. 49, 50, 53, 54, & 55.

But, based on the standards laid out above, under Rule 26(b)(1), Randstad may seek and obtain discovery regarding any nonprivileged matter that is relevant to Randstad's claims as pleaded and – as a related but distinct requirement – proportional to the needs of the case *See Samsung*, 321 F.R.D. at 279-81, 292.

In the August 4, 2021 Order [Dkt. No. 88], the Court explained that this case was filed after Randstad sought, in *Randstad General Partner (US), LLC v. Beacon Hill Staffing Group LLC, et al.*, Cause No. 1:19-CV-1655-MHC (N.D. Ga.) (the "Georgia Case") – Randstad's action against Beacon Hill, Shawna Bestreich, and Erik Adams alleging tortious interference with Bestreich and Adams's Restrictive

-5-

Covenants and conspiracy and suing Bestreich for breach of her Restrictive Covenant and for tortious interference with Adams's Restrictive Covenant by recruiting Adams to Beacon Hill in mid-2018 – leave to amend to assert a claim against Beacon Hill and Bestreich for hiring away Shauna Mooney in mid-2019 in Dallas, "apparently along with claims regarding other former Randstad employees hired by Beacon Hill during the pendency of the Georgia Case." Dkt. No. 88 at 3-4.

The Court, in that Order, granted in part the Federal Rule of Civil Procedure 12(b)(6) motions to dismiss and dismissed without prejudice "Counts IV and V of the Amended Complaint, [in which] Randstad allege[d] that Beacon Hill (Count IV) and Wang (Count V) interfered with Randstad's customers" "and Randstad's damage allegations" and "otherwise denie[d] the motions to dismiss." Dkt. No. 88 at 1, 11, 12-13. The Court explained that "Texas recognizes distinct torts of interference with existing contract and interference with prospective business relation that have distinct elements"; that "[i]t is not clear whether Randstad alleges interference with existing contract ('discontinue'), interference with prospective business relation ('fail to enter') or both"; that, "[t]o the extent Randstad alleges interference with an existing contract, its pleading is deficient because (1) "it fails to identify any specific customer contract with which it contends a defendant interfered" and (2) "it fails to allege facts showing the customer breached that contract"; and that, "[t]o the extent Randstad alleges interference with prospective business relations it is likewise deficient" because (1) "it fails to identify any prospective customers" and (2) "it fails to plead facts showing that a future business

relation was reasonably probable." *Id.* at 11-13 (cleaned up).

Randstad's live pleading – the Second Amended Complaint for Injunctive Relief and Damages [Dkt. No. 98] (the "SAC") – now alleges six claims:

- "Intentional Interference With Contractual Relations – Randstad Employees" against Beacon Hill and against Wang, alleging that "Randstad has valid and enforceable contractual relationships with its employees, including, without limitation, the Beacon Hill Hires [that is, four employees hired in Texas: Shawna Bestreich, Erik Adams, Shauna Mooney, and Ashley Hooper], by virtue of their restrictive covenant"; "[d]uring their employment with Randstad, the Beacon Hill Hires either customarily and regularly solicited customers or prospective customers, customarily and regularly engaged in making sales or obtaining orders or contracts for products or services to be performed by others, or managed a subdivision of Randstad, regularly directed the work of two or more employees, and had the authority to hire or fire other employees or had particular weight given to their suggestions or recommendations regarding changes to employment status"; "Randstad had a reasonable expectation that these contractual relationships would continue and that its employees including, without limitation, the Beacon Hill Hires, would comply with the provisions of the Agreements agreements with Randstad"; Beacon Hill and Wang "had knowledge of Randstad's Agreements with its employees, including, without limitation, the Beacon Hill Hires"; Beacon Hill and Wang, by their involvement in litigation with Randstad, including the Georgia Case, and other companies in the staffing industry, "knew or should have known that Randstad had valid and enforceable restrictive covenant agreements, and, despite [their] active or constructive knowledge, chose to interfere with Randstad's agreements, resulting in willful and intentional acts of interference with Randstad's restrictive covenant agreements"; "Beacon Hill hires Randstad personnel and places them in positions in the same territory performing the same or substantially similar job functions" and "also encourages former Randstad employees to call on their former clients and/or fails to take any measures to prevent the employees from soliciting their former clients"; "[i]n doing so, Beacon Hill violates the non-competition restrictions in the above-referenced employees' agreements"; "Beacon Hill has consciously chosen to not implement a restrictive covenant screening program or to take other measures that would allow it to avoid violating restrictive covenants"; and, "[a]s a direct and proximate result of Beacon Hill's [and Wang's] actions described above – which is

not limited to the Beacon Hill hires – Randstad has suffered and continues to suffer irreparable harm and monetary damages."

- "Intentional Interference With Prospective Business Relations – Customers" against Beacon Hill and Wang, alleging that Beacon Hill and Wang, "without privilege, engaged in improper and wrongful conduct by employing former Randstad employees, including, without limitation, the Beacon Hill Hires, and directing or encouraging them to solicit customers, in violation of their restrictive covenant agreements with Randstad"; "Wang has also either created or played a critical role in Beacon Hill's standard separation protocol, which is designed to disrupt the relationship between Randstad and the client"; "Beacon Hill acted purposefully, with malice, and with intent to injure Randstad when it hired and continued to employ Randstad's employees, including, without limitation, the Beacon Hill Hires"; "Wang acted purposefully, with malice, and with intent to injure Randstad when he promulgated, implemented, encouraged, and deployed Beacon Hill's nationwide program of disregarding or knowingly ignoring restrictive covenants, including, without limitation, those relevant to the Beacon Hill Hires"; "[a]s a result of Beacon Hill's inducement, Beacon Hill caused Randstad Customers to discontinue, to fail to enter, and/or to reduce their business with Randstad by diverting work to Beacon Hill or by approving Beacon Hill as a staffing provider, increasing the pool of staffing companies against which Randstad is competing"; "Beacon Hill directs candidates to end their employment with Randstad in a way that is calculated to disrupt the relationship between Randstad and its clients"; "[a]s a direct and proximate result of Beacon Hill's actions described above, Randstad has suffered and continues to suffer irreparable harm and monetary damages, which include the monetary damages identified in Randstad's claim for tortious interference with employee contracts (Count I)"; and, "[a]s a direct and proximate result of Wang's actions described above, Randstad has suffered and continues to suffer irreparable harm and monetary damages, which include the monetary damages identified in Randstad's claim for tortious interference with employee contracts (Count III)."

- "Unfair Competition" against Beacon Hill and Wang, alleging that "Beacon Hill's and Wang's acts and omissions described above constitute unfair competition"; that Beacon Hill, led by its CEO, organized a scheme to raid Randstad's employees as a means to improperly and illegally acquire Randstad's workforce, its customers, and its goodwill, in order to harm Randstad in the marketplace so that Beacon Hill could unfairly compete against Randstad"; that "[t]his

scheme, including solicitation of Randstad's employees, was undertaken with unlawful and improper purpose, and employed unlawful and improper means"; that "Beacon Hill's and Wang's conduct was contrary to honest practices in industrial or commercial matters, as evidenced by its status as a serial defendant in restrictive covenant litigation"; that, "[u]ntil Beacon Hill and Wang carried out this scheme, Randstad maintained valid relationships, or the expectancy of relationships, with their customers and employees"; that "Randstad reasonably expected that these relationships and its work force would continue and would not be unjustifiably disrupted"; and that "Randstad has been competitively and commercially damaged as a proximate result of the acts and omissions of unfair competition committed by Beacon Hill and, "[s]pecifically, there was a reasonable probability of entering into contractual or business relationships with third parties, but those prospective business relationships were disrupted by Beacon Hill's and Wang's actions."

- "Intentional Interference With Contractual Relations" against Bestreich as to Mooney, alleging that "Bestreich has intentionally interfered with Randstad's contractual relationship with Mooney and willfully and intentionally interfered with Mooney's Agreement."

Dkt. No. 98 at 45-58.

Randstad also pleads a request for exemplary damages, alleging that "Beacon Hill's and Wang's actions have been willful and malicious and were intended to harm Randstad and were in reckless disregard of Randstad's rights and of the consequences to Randstad" and that "Beacon Hill has acted with the specific intent to harm Randstad by hiring Randstad employees to perform the same duties in the same territory without taking any measures to comply with their restrictive covenant agreements, by refusing to implement any form of restrictive covenant screening, and by recommending to its new hires that they leave Randstad with minimal notice to disrupt existing relations between Randstad and its clients." *Id.* at 58.

Randstad's six claims are, understandably, focused on Beacon Hill's, Wang's, and Bestreich's conduct and interactions with or effects on Randstad's current or former employees and customers and clients. *See id.* at 45-58. So are most of the SAC's factual allegations. *See id.* at 1-44.

But, Randstad alleges, "[t]his case is about Beacon Hill's hiring practices generally," where

> Beacon Hill's conduct is improper, unfair, and illegal. It must stop. Shawna Bestreich, Erik Adams, Shauna Mooney, Ashley Hooper, and numerous other employees are employed or have been employed in positions with Beacon Hill that violate their restrictive covenants. Beacon Hill is complicit with those breaches, among many others, and acknowledges that it does absolutely nothing to prevent violations of restrictive covenants; in fact, it admittedly does not even want to know about them.
>
> Unfortunately, because litigation of this sort is seen as just another cost of doing business, or an investment by Beacon Hill – worth it if the cost of such is less than the benefit of the misappropriated information and customer goodwill – the company has not done anything to modify its hiring practices to avoid restrictive covenant violations.
>
> …. [This case] is not limited to any particular employee, division, office, or hire, no matter how hard Beacon Hill tries to frame it in that manner (and it will). Bestreich, Adams, and Mooney are mere symptoms of Beacon Hill's malfeasance, they are not the cause. Nor will holding Beacon Hill accountable solely for those three hires root out the underlying cause, which is Beacon Hill's utter disregard for Randstad's enforceable restrictive covenant agreements with its employees. As the Court noted in the Georgia Litigation: "To be sure, the Court is alarmed by Beacon Hill's apparent disregard for the fact that Randstad employees are generally bound by a covenant not to compete." However, the Court found that Beacon Hill was not subject to personal jurisdiction in Georgia. There is no jurisdictional issue here and, respectfully, this Court should be equally alarmed and should put a stop to it once and for all.
>
> The Court should also enter exemplary and punitive damages awards against Beacon Hill and Wang for this wanton and intentional misconduct.

-10-

*Id.* at 12-13.

And, at points, Randstad's allegations in the SAC encompass Beacon Hill's

and Wang's interactions and litigation with other companies:

> Since 2016 alone, Beacon Hill has hired dozens of Randstad employees and has targeted many more. Indeed, even after Randstad filed a lawsuit in Georgia in March 2019 (the "Georgia Litigation"), which remains ongoing, Beacon Hill hired multiple Randstad employees in violation of their restrictive covenant agreements and has targeted and solicited dozens if not over 100 more – despite being actively involved in litigation with Randstad regarding the very same agreements and conduct.
>
> The purpose of this scheme is to compete unfairly by gaining access to and exploiting Randstad's (and other competitors') confidential information, trade secrets, and customer and Talent goodwill which is otherwise protected by restrictive covenant agreements.
>
> Beacon Hill's improper and illegal conduct is not limited to a single rogue manager or division, nor is this case. Rather, Beacon Hill's business model, as formulated and implemented by its Chief Executive Officer, Andrew Wang, is to intentionally violate or willfully ignore restrictive covenants, as admitted by its own 30(b)(6) corporate representative during the Georgia Litigation: ….
>
> Beacon Hill is a serial tortfeasor that grows by violating restrictive covenants. In fact, Wang views violating restrictive covenant agreements as a critical part of its growth strategy.
>
> Between 2003 and 2009, Beacon Hill grew from approximately 40 employees to 100. But, starting in approximately 2010, Beacon Hill began experiencing stratospheric employee growth, as is evident from their employee figures in the "our evolution" page of Beacon Hill's website: ….
>
> That "massive growth" is a direct result of Beacon Hill's and Wang's willingness to do what other staffing companies will not do: flagrantly disregard restrictive covenants and encourage new hires to violate any restrictive covenants they have with their prior employer.
>
> This "massive growth" also coincides with a massive growth in the number of restrictive covenant lawsuits where Beacon Hill appears as a defendant. Prior to 2010, Beacon Hill was named as a defendant in only one restrictive covenants lawsuit. However, after 2010, Beacon

Hill has been sued no fewer than 25 times for tortious interference with contractual obligations.

Beacon Hill's volume of restrictive covenant litigation is dramatically disproportionate to Beacon Hill's size. The reason why Beacon Hill is sued for restrictive covenant violations at a dramatically higher rate than its competitors is because Beacon Hill grows by hiring employees and placing them in positions that violate restrictive covenant agreements.

Nor did this lawsuit or others alter Beacon Hill's conduct. Since Randstad filed this lawsuit, Beacon Hill has been repeatedly sued by other staffing companies. From Beacon Hill's and Wang's perspective, however, this litigation is simply a necessary side effect of its strategy to obtain superior talent and customer contacts by hiring new employees in positions that violate restrictive covenants and having its new hires contact their former customers and colleagues, in violation of customer and employee non-solicitation restrictions.

This strategy is conceived of, driven, and implemented by Wang, assisted by other members of its Executive Committee, including Charlie Cain. According to Wang's professional biography on Beacon Hill's website, he has spearheaded Beacon Hill's transformation from a small, 10-person company to a company employing more than 600 employees. Beacon Hill describes Wang as "responsible for Beacon Hill Staffing Group's vision, strategic direction, and overall performance." Wang is the quintessential micromanager and is personally responsible not only for conceiving of Beacon Hill's illegal growth strategy, but personally executing on it and personally committing torts.

Indeed, Wang personally authors every single offer letter to every new Beacon Hill hire. This is not the behavior of a CEO who is merely responsible for high-level strategic decisions and delegates the execution thereof to lower level executives; Beacon Hill is Andy Wang and he would have it no other way.

Numerous companies, including Randstad, have sent Wang letters informing him and Beacon Hill of restrictive covenant agreements these companies have entered into with recent Beacon Hill new hires and have requested that Beacon Hill ensure that they cease and desist interfering with the restrictive covenant agreements. The response is typically a form letter from outside corporate counsel that does not deny any facts – how could it? – but rather feigns indignation, plays the victim, and lashes out at Randstad for coming after the "little guy"; all classic examples of projection.

Wang is also aware of his company's propensity to hire individuals subject to restrictive covenant agreements, because Beacon Hill offer letters – which, again, he personally authors and often signs –

regularly contain an agreement to pay for legal fees associated with any lawsuit brought by the prior employer. They do not, however, include language that is standard in offer letters in the staffing industry (among many others) seeking assurances that the employee is permitted to work in the role for which he or she is being hired and is not limited in any manner by a restrictive covenant; as Cain testified under oath as Beacon Hill's 30(B)(6) witness, Beacon Hill does not want to know that information.

Not surprisingly, Wang is aware of Beacon Hill's involvement in restrictive covenants litigation as a defendant. However, Wang has made a conscious decision to repeatedly violate restrictive covenant in order to obtain premium talent by engaging in behavior that other participants in the market will not: blatantly violating restrictive covenants.

On information and belief, Wang actively directs Beacon Hill's managing directors to hire experienced individuals in markets where Beacon Hill wishes to develop a new line of business without regard to whether that individual is bound by any restrictive covenant, because he assesses that it is less expensive to do so than to nurture homegrown talent, even including the cost of any resulting litigation if he gets caught (and, as discussed herein, Beacon Hill takes steps to insure its conduct is hidden).

Beacon Hill also communicates its willingness to violate restrictive covenants to potential hires and, on information and belief, to third-party recruiters it retains. For instance, in the summer of 2019, a Randstad employee interviewed with Charlie Cain, head of Beacon Hill's administrative division and a member of its Executive Committee. When the employee expressed concern about his non-compete with Randstad, Cain told the employee to not worry about his non-compete, that Beacon Hill had a very good legal team, and that he should focus on producing and Beacon Hill would handle any issues related to his non-compete.

In spite of that knowledge, Beacon Hill has not implemented a policy or practice to screen potential new hires for restrictive covenant agreements. Nor does it take any action to ensure non-interference with their competitors' agreements after receiving cease and desist letters from their competitors or otherwise learning of an employee's restrictive covenant agreement. Rather, in an effort to grow its business as quickly as possible, Beacon Hill intentionally ignores or intentionally attempts to avoid learning about restrictive covenant agreements that potential new hires may have with their prior employers; and when it does learn of such agreements it ignores them. But this "head in the sand" approach does not eliminate Beacon Hill's legal obligation not to

-13-

interfere with its competitor's restrictive covenant agreements and compete unfairly, in particular when it already knows exactly what it is trying to avoid gaining knowledge of.

....

When hiring more senior employees, Beacon Hill accounts for the likelihood of potential restrictive covenant litigation by including in some offer letters an offer to pay for the employee's legal counsel – which is usually its own outside counsel – to defend against any claims brought by a prior employer. For instance, Beacon Hill hired Bestreich, a former Vice President at Randstad and now part of Beacon Hill's leadership team in Dallas, Texas. In her offer letter, Beacon Hill identified Randstad by name and included a promise to pay for her legal counsel in the event that Randstad sued her for accepting employment with and working for Beacon Hill.

Despite recognizing that Randstad would have a valid basis to initiate litigation against Beacon Hill and Bestreich, Beacon Hill did nothing to prevent her from violating her restrictive covenant agreement – even after it received a cease and desist letter from Randstad.

Through its strategy to interfere with restrictive covenants and obfuscate its hiring of individuals in positions that violate their restrictive covenants, Beacon Hill illegally capitalizes on goodwill and market share developed by Randstad and other competitors, gambling that a competitor will not initiate a lawsuit if several weeks or months pass before the employee is identified as working at a competitor.

By hiring employees in positions that violate their restrictive covenants, Beacon Hill is able to establish viable offices in locations where it previously failed. For instance, Beacon Hill attempted to establish a presence in Dallas in administrative staffing in 2011 and 2012, but the location did not become self-sufficient and collapsed. It was not until Beacon Hill hired Bestreich in 2018, and encouraged her as an agent of Beacon Hill to recruit and hire others from Randstad, that Beacon Hill was finally able to gain a foothold in Dallas. Beacon Hill interferes with and blatantly ignores restrictive covenants in an effort to avoid the inherentdifficulties and costs in organically developing new business. It is easier to steal something than to build it, as Beacon Hill has shown time and again.

....

Because the basic function of staffing companies – the provision of staffing services – is consistent across service providers, staffing companies must distinguish themselves on the caliber of their personnel, their ability to efficiently provide staffing services, and the quality of the Talent that the staffing companies are able to provide.

-14-

As detailed below, rather than organically develop its own employees, Beacon Hill relies on its competitors, like Randstad, to develop and invest in personnel and establish customer relationships and then hires those employees, placing the employees in the same market, performing the same services, and often soliciting the same customers.

## III. BEACON HILL'S PATTERN OF RAIDING COMPETITORS AND FLAGRANTLY VIOLATING RESTRICTIVE COVENANT AGREEMENTS

Since its inception, Beacon Hill has pursued a strategy of growing by poaching employees from competitors, without regard to whether the employee is subject to any restrictive covenant agreements. Indeed, Beacon Hill's website boasts that, under Wang's leadership, Beacon Hill has grown from fewer than 10 to more than 1,000 employees. It omits, however, that a large portion of that growth has occurred because of Beacon Hill's illegal poaching of its competitors' employees to "acqui-hire" customer relationships, in violation of restrictive covenant agreements.

As a result, Beacon Hill is constantly defending itself against tortious interference claims based on alleged violations of restrictive covenant agreements throughout the United States. Beacon Hill has been a defendant in more than 20 trade secret or restrictive covenants lawsuits since 2011, including the following: ….

Beacon Hill has only added to this list of cases nationwide since Randstad originally filed this action, and actions against Beacon Hill or Beacon Hill personnel now also include the following: ….

Even this listing is incomplete, as additional cases or arbitrations have been filed against Beacon Hill or Beacon Hill personnel that are not readily identifiable.

These lawsuits, and any negotiated resolutions thereof, are relevant not only because they illustrate that hiring from competitors without regard for those competitors' restrictive covenant agreements with their employees is Beacon Hill's modus operandi, and that it considers litigation just another cost of doing business, but also because Beacon Hill's acceptance and implementation of limited no-hire agreements demonstrates that creating and implementing effective restrictive covenant screening procedures is feasible. Such litigation and settlements also establishes that Beacon Hill rescinds any screening measures unless they are contractually obligated to maintain them, demonstrating their willful disregard for restrictive covenants and bad faith.

Beacon Hill's practice, implemented by Wang and Beacon Hill's leadership team, is quite uniform. The company will ignore a

competitor's restrictive covenant agreement, solicit the employee, hire the employee into an area they are restricted from working in, in a role they are prohibited from performing, and promise to defend the employee against any legal action brought by the former employer, which Beacon Hill views as a cost of doing business. After the suit is filed, Beacon Hill will then almost always file a motion to dismiss in an attempt to avoid discovery, then attempt to resolve the litigation for a short mutual no-hire period or something of that nature.

Beacon Hill will then enter into a confidential settlement agreement to resolve the matter, then continue the same course of conduct that leads them to inevitably violate later restrictive covenant agreements. By operating in this manner, their behavior is akin to a company that tolerates widespread sexual harassment by paying off harassed employees rather than take any steps to comply with the law.

Despite this immense amount of litigation, according to its corporate representative's deposition, Beacon Hill has never had internal discussions about hiring employees from competitors that employ restrictive covenants.

In response to Randstad's discovery requests, Beacon Hill admitted that it does not contend that it takes adequate measures to screen its new hires for applicable restrictive covenants.

....

As discussed above, Beacon Hill's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that Beacon Hill, notwithstanding these continuing obligations, hired and continued to employ Bestreich in a role that necessarily caused Bestreich to violate her obligations to Randstad. When hiring Bestreich, Beacon Hill followed its pattern or practice of ignoring and failing to inquire about whether a candidate is bound by restrictive covenants.

....

As discussed above, Beacon Hill's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that Beacon Hill, notwithstanding these continuing obligations, hired Adams in a role that caused Adams to vi olate his obligations to Randstad. When hiring Adams, Beacon Hill followed its pattern or practice of ignoring and failing to inquire about whether a candidate is bound by restrictive covenants.

....

As discussed in more detail below, Beacon Hill's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that Beacon Hill, notwithstanding these continuing obligations, hired Mooney in a role that caused Mooney to violate her

-16-

obligations to Randstad. When hiring Mooney, Beacon Hill followed its pattern or practice of ignoring and failing to inquire about whether a candidate is bound by restrictive covenants.

....

As discussed above, Beacon Hill's status as a serial violator of restrictive covenant agreements, including Randstad's, indicate that Beacon Hill, notwithstanding these continuing obligations, hired Hooper in a role that caused Hooper to violate her obligations to Randstad.

*Id.* at 2-10, 21-27, 36, 38, 40-41, 42.

Beacon Hill and Wang have filed motions to dismiss the SAC, re-urging arguments for dismissal that the Court did not expressly address in its order on the motions to dismiss the first amended complaint. *See* Dkt. No. 105 & 106.

In responding to the MTCs, Beacon Hill and Wang also assert that, "[d]espite clear guidance from the Court, Plaintiffs' SAC fails to correct these deficiencies and Beacon Hill [and Wang] anticipate[] renewing their request[s] to dismiss these claims" and that "[t]herefore, it is likely that the claims related to tortious interference with business relations will not survive or merit discovery." Dkt. No. 99 at 14 n.8; Dkt. No. 101 at 15 n.6. The Court cannot accept this invitation to speculate on how the currently pending motions to dismiss will turn out and will not limit or prohibit discovery that is relevant to a currently pleaded claim or defense based on the responding party's confidently belief that the Court will eventually dismiss it. *See Nerium Skincare, Inc. v. Olson*, No. 3:16-cv-1217-B, 2017 WL 277634, at *6-*7 (N.D. Tex. Jan. 20, 2017), *objections overruled sub nom. Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-cv-1217-B, 2017 WL 9934881 (N.D. Tex. Feb. 6, 2017).

And Beacon Hill and Wang assert that, on the MTCs, "there are three primary
disagreements before the Court"; that "[t]he parties are at an impasse on two: (i)
Beacon Hill's litigation with other staffing companies, including discovery,
deposition transcripts and settlement agreements from the cases [and, as to Wang,
"Mr. Wang's involvement in Beacon Hill's prior litigation, including any
interrogatory answers he ever verified and any deposition transcripts where he was
deposed in his individual or corporate capacity"]; and (ii) "Beacon Hill's and Mr.
Wang's general practices, approaches, and attitudes toward restrictive covenant
agreements"; that "[t]his information is not relevant to the claims in Plaintiffs'
Second Amended Complaint" and "and is not properly directed at Mr. Wang"; and
that the third dispute involves the question of "what group of Beacon Hill hires are
at issue in this litigation and subject to discovery." Dkt. No. 99 at 1-2; Dkt. No. 101
at 2. According to Beacon Hill,

> Plaintiffs take the position that this case is "national in scope" but that
> does not answer the question. For example, there can be no serious
> dispute that Plaintiffs cannot pursue any claims that are barred by
> Texas' two-year statute of limitations. Similarly, Plaintiffs list
> individuals whom they do not even contend are in violation of their
> agreements. Plaintiffs also cannot pursue claims related to people who
> were never employed by either Plaintiff. Yet, individuals in each of
> these categories are listed in the Complaint. Plaintiffs also cannot
> pursue claims related to unidentified individuals. Yet, the discovery
> purports to be unlimited.
>     Plaintiffs cannot refuse to identify the group of individuals about
> whom their claims supposedly involve. The Order on the Motions to
> Dismiss make clear that Plaintiffs must identify the contracts with
> which they contend Defendants interfered. Yet, Plaintiffs have not
> identified in the SAC any agreements with which they claim Beacon
> Hill has interfered other than the four employees hired in Texas:
> Shawna Bestreich, Erik Adams, Shauna Mooney, and Ashley Hooper

(the "Texas Hires"). Plaintiffs have not meaningfully conferred on who they contend the relevant individuals might be. Plaintiffs merely declare that the case is "national" in scope, and leave it to Beacon Hill and the Court to figure out what that means for purposes of identifying relevant custodians, applying a relevant time period, and figuring out the relevant data sources in a manner that comports with Rule 26. The identification of the individuals covered by Plaintiffs' claims is a threshold issue, which must be decided before Beacon Hill can collect, review, and produce documents or determine if there are communications that need to be logged for privilege.

Dkt. No. 99 at 2.

Beacon Hill and Wang alternatively argue that, "if this Court is inclined to expand discovery beyond [the four Texas Hires], the most expansive view possibly supported by the SAC is discovery related to those individuals that Plaintiffs identify in Paragraph 108, to the extent they were hired on or after September 4, 2018 and were formerly employed by the Plaintiffs." *Id.* at 15; *accord* Dkt. No. 101 at 11 ("However, the largest conceivable population of individuals that could be at issue are those specifically identified by Plaintiffs as being formerly employed by Plaintiffs, and whom Plaintiffs specifically contend were hired by Beacon Hill in the same geographic territory performing the same or substantially similar duties as those at Randstad whose hires are within the two-year statute of limitations. [Dkt. 98, ¶ 108]. Based on the SAC, those individuals are the people identified in Paragraph 108 and who were hired on or after September 4, 2018 (two years before Plaintiffs' initial Complaint was filed).").

The Court finds that the review above of Randstad's pleaded claims and allegations in the SAC makes clear that Beacon Hill's and Wang's general practices,

approaches, and attitudes toward restrictive covenant agreements and hiring away employees subject to them are relevant, as a general matter, to the pending claims. Although the Court denied in part the motions to dismiss and may have, without discussion, "declined to limit the scope of this case to only employees in Texas," Dkt. No. 89-1 at 5; Dkt. No. 91-1 at 3, the Court cannot agree with Randstad that the Court's August 4, 2021 Order [Dkt. No. 88] "conclusively resolved" "whether this case involves only Texas hires or covers a national scope," Dkt. No. 89-1 at 5; Dkt. No. 93 at 2, 3; Dkt. No. 103 at 1-2, 6; Dkt. No. 104 at 2. And the Court will not, on these Rule 37(a) motions to compel, resolve any choice-of-law issues that may be implicated by or lurking in Randstad's claims.

Rather, the Court determines that, for purposes of these MTCs and Randstad's discovery requests at issue, Randstad can seek discovery regarding those general practices, approaches, and attitudes and regarding its former employees hired by Beacon Hill, regardless of whether they are specifically named in the SAC or work or were hired away outside of Texas. Again, as laid out above, discovery as to those employees, generally, is relevant to Randstad's claims and supporting allegations as currently pleaded in the SAC – regardless whether the Court could or would actually adjudicate a tort claim directly based on alleged interference as to that particular former employee. "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's

claim or defense is also important in resolving the issues." *Samsung*, 321 F.R.D. at 280.

In the Court's view, Randstad is seeking discovery "to find support for properly pleaded claims, not to find the claims themselves." *Id.* (cleaned up). That is, "the Court does not believe that [Randstad] is simply casting about for new or different (and unpleaded) causes of action but rather – put most sympathetically for [Randstad's] position – for additional factual bases for those causes of action that it has already pleaded." *Id.* at 292.

The scope of discovery requests that are, under Rule 26(b)(1), proportional to the needs of the case is another matter, which the Court will address as to specific RFPs and interrogatories. *Accord id.*

## III.   Discovery requests allegedly beyond the case's temporal scope

Beacon Hill and Wang assert that "[t]he majority of discovery requests seek discovery from January 1, 2010 or January 1, 2014 to present"; that "[t]his temporal scope is over broad and not supported by any claims Plaintiffs could be asserting in this case"; that "[t]here is a two-year statute of limitations in Texas and Plaintiffs filed their initial Complaint on September 4, 2020"; that "any facts or evidence regarding hires prior to September 4, 2018 are not relevant or discoverable and "conduct that occurred before September 4, 2018, two years before the Original Complaint was filed, cannot possibly be at issue"; and that "[t]his temporal limitation should apply across all discovery." Dkt. No. 99 at 16-17; Dkt. No. 101 at 15-16.

-21-

Randstad replies that Beacon Hill and Wang are attempting to supplement their objections in their responses to the MTCs; that their "original answers were framed only in terms of the Texas hires, and [Beacon Hill and Wang] failed to answer to the extent [it or he] believes a reasonable duration exists, provide information to the extent it concerned only hires in Texas, or explain why Randstad's requested time period is excessive in duration"; and that, in their responses, they attempt "to limit the relevant time period to 2018, but Randstad is entitled to discovery on events that occurred prior to the statute of limitations period to establish Beacon Hill's [and Wang's] pattern and practice, including the lack of change over time." Dkt. No. 103 at 5 (citing *Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-cv-2096-B, 2021 WL 90110, at *8 (N.D. Tex. Jan. 11, 2021) (allowing discovery for six-year period prior to start of potential statutory liability)); Dkt. No. 104 at 5 (same).

The Court agrees with Randstad. Discovery that is relevant to Randstad's claims and proportional to the needs of the case is not limited to the statutory two-year period, and, as a general matter, Randstad's seeking discovery covering a time period back to 2014, six years before the complaint's filing, is reasonable under the circumstances of this case, for the reasons that Randstad explains and subject to any proportionality analysis below leading to a different conclusion as to a particular discovery request.

IV.   **Interrogatories to Beacon Hill and Wang**

   **A. Verifications of interrogatories**

-22-

As Randstad acknowledges in its replies, *see* Dkt. Nos. 103 & 104, Beacon Hill and Wang have now verified their interrogatories. Randstad's requests to compel them to do so is moot.

## B. Interrogatory No. 1 to Beacon Hill

Interrogatory No. 1 asks Beacon Hill to "[i]dentify every Randstad employee you have hired since January 1, 2014. For each employee, provide the employee's name, title at Beacon Hill, whether the employee had a restrictive covenant agreement with Randstad, whether Beacon Hill agreed to indemnify the employee in the event that Randstad filed a lawsuit against the employee and/or Beacon Hill, whether the employee has a restrictive covenant agreement with Beacon Hill, and which Beacon Hill employee(s) made the decision to hire that employee."

Randstad explains that it "requested this information because, as detailed in its Amended Complaint, Beacon Hill instructs employees to not initially change their LinkedIn profile to hide that they are working for Beacon Hill and to obtain basic information about relevant hires"; that "[t]his information is also relevant because it establishes Beacon Hill's knowledge of a particular employee's restrictive covenant agreement"; that "Beacon Hill's agreement to indemnify the employee from litigation indicates its awareness that it is likely interfering with a restrictive covenant agreement through that hire"; that "[t]he answer to this interrogatory is critical to Randstad's ability to develop its claims against Beacon Hill and foundational to identifying relevant sources of information"; and that "[n]one of

Beacon Hill's objections warrant the wholesale non-answer it has provided." Dkt. No. 91-1 at 10-12.

Beacon Hill responds that

Plaintiffs seek the identity of every Randstad employee hired by Beacon Hill since January 1, 2014. The employees identified in Paragraphs 100 and 108 of the SAC cannot form the basis of a general tortious interference claim. Many of the individuals are located in states other than Georgia or Texas, so different substantive law and statutes of limitation would apply to each hire.

First, Plaintiffs failed to confer on this issue and therefore the Motion should be summarily denied as to Interrogatory Number 1. Second, Plaintiffs have not made any allegations that any of the employees, beyond the Texas Hires, had agreements with which they contend Beacon Hill interfered. Plaintiffs only allege that the Texas Hires "customarily and regularly solicited customers or prospective customers, customarily and regularly engaged in making sales or obtaining orders on contracts for products or services to be performed by others, or managed a subdivision of Randstad, regularly directed the work of two or more employees, and had the authority to fire or fire other employees or had particular weight given to their suggestions or recommendations regarding changes to employment status." [Dkt. 98, ¶ 169]. Plaintiffs do not make any similar allegations regarding any employees beyond the Texas Hires. Third, many of the hires for which Plaintiffs apparently seek discovery joined Beacon Hill long before this action was filed and the applicable two-year statute of limitations expired long before filing. Therefore, hiring activity since January 1, 2014 is neither relevant nor proportional to the issues presented by this case. Fourth, many of the employees referenced by name in the SAC were employed by entities other than the Plaintiffs. [Although Plaintiffs' discovery requests define Former Randstad Employees as "all Beacon Hill employees who were formerly employed at Randstad" and defines Randstad as "Randstad General Staffing and Randstad Technologies," it also explicitly includes the Paragraph 71 (now Paragraph 100) employees as "Former Randstad Employees" despite the fact that many of those employees were not necessarily employees of Randstad General Staffing or Randstad Technologies.] Plaintiffs do not have standing to bring any claims related to those hires. Fifth, Plaintiffs purport to seek discovery on individuals they have not even named in the SAC. In other words, Plaintiffs seek to conduct a fishing expedition in hopes of uncovering additional claims related to

individuals they were not even aware of having left their employment and joining Beacon Hill. Finally, any discovery should be limited to the only two Beacon Hill divisions that could be implicated – the Admin and Technologies divisions. According to Plaintiffs these are the divisions that are substantially equivalent to the lines of business Plaintiffs provide.

Beacon Hill has hired employees that previously worked for Plaintiffs, as Plaintiffs have done with former Beacon Hill employees. What is contested is whether their employment with Beacon Hill violated agreements with the Plaintiffs. The relevant subset of hires must be narrowly tailored to comply with Rule 26. Practically, Beacon Hill does not have a list of employees that came from Plaintiffs and there is no reliable way to come up with a list. Plaintiffs are required to identify and define the subject matter of their claims, not vice versa. Plaintiffs cannot force a defendant to go on a fishing expedition in its own records to see what might plausibly support an unasserted claim. Further, Beacon Hill cannot feasibly be required to investigate the employment history for nearly 900 employees across its eight National Divisions. Many of the employees identified in the SAC are also no longer employed by Beacon Hill. The general discovery regarding hires of employees who were, at any time prior, employed by Plaintiffs has no bearing on the claims related to the Texas Hires' hiring and is therefore not properly discoverable in this case.

Dkt. No. 99 at 23-25.

Much of Beacon Hill's and Wang's opposition assumes that Randstad is entitled to information only about employees whose hiring could itself form the basis for a timely claim. But, as explained more generally above, relevance under Rule 26(b)(1) is not so limited. *See Samsung*, 321 F.R.D. at 280. And a discovery request is not an improper fishing expedition just because it seeks information that the requesting party does not already have or to identify specific information about a well-described class or category of persons, places, things, or events that otherwise falls within the scope of Rule 26(b)(1).

-25-

And "a party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity; [a] party objecting on these grounds must explain the specific and particular way in which a request is vague; [t]he responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories and, [i]f necessary to clarify its answers, ... may include any reasonable definition of the term or phrase at issue; and, [i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Lopez*, 327 F.R.D. at 580 (cleaned up). In responding to the MTC, Beacon Hill seems to offer an answer to its own question about what "Randstad employee" means. *See* Dkt. No. 99 at 24 n.12 ("Although Plaintiffs' discovery requests define Former Randstad Employees as 'all Beacon Hill employees who were formerly employed at Randstad' and defines Randstad as 'Randstad General Staffing and Randstad Technologies,' [Randstad's complaint] also explicitly includes the Paragraph 71 (now Paragraph 100) employees as 'Former Randstad Employees' despite the fact that many of those employees were not necessarily employees of Randstad General Staffing or Randstad Technologies."). If Beacon Hill otherwise intended to press its vagueness objection, the interrogatory is "certainly … not so vague or ambiguous as to be incapable of reasonable interpretation and to prohibit" Beacon Hill from answering. *Heller*, 303 F.R.D. at 492.

And Beacon Hill "is not required to make an extensive investigation in responding to an interrogatory, but [it] must pull together a verified answer by

reviewing all sources of responsive information reasonably available to [it] and providing the responsive, relevant facts reasonably available to" it. *Lopez*, 327 F.R.D. at 579 (cleaned up). But "[t]he fact that an interrogatory calls for a thorough response – one that will take time and effort to answer – does not make it improper." *Id.* (cleaned up).

The Court overrules Beacon Hill's objections (including, for the reasons that Randstad explains, *see* Dkt. No. 91-1 at 11, any objection based on Beacon Hill's having already answered Federal Rule of Civil Procedure 36 requests for admission in the Georgia Case), GRANTS the MTC as to Interrogatory No. 1, and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 1, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, for every Randstad General Staffing or Randstad Technologies employee that Beacon Hill has hired since January 1, 2014.

### C. Interrogatory Nos. 2-13 to Beacon Hill

In these interrogatories, Randstad asks Beacon Hill to answer the following:

- Interrogatory No. 2: Has Beacon Hill, at any point since January 1, 2014, considered or implemented measures to screen whether candidates for employment with Beacon Hill are subject to an agreement that contains restrictive covenants? If so, describe the measures considered or implemented, when Beacon Hill implemented the measures, when Beacon Hill stopped the measures, whether the measures were limited to a particular division of Beacon Hill, and who was involved in the decision to implement or not implement such measures.
- Interrogatory No. 3: Describe in detail any measures that Beacon Hill takes to avoid hiring employees in a role that violates a restrictive covenant agreement. For each such measure, describe when Beacon Hill implemented the measure, if/when Beacon Hill stopped the measure, whether the measure

is limited to a particular division of Beacon Hill, and the individuals involved in the decision to implement the measure.

- Interrogatory No. 4: Do Beacon Hill contend that it takes adequate measures to avoid violating restrictive covenant agreements? If so, identify the facts that support your contention.

- Interrogatory No. 5: Has Beacon Hill, at any point since January 1, 2014, considered or implemented measures to screen an employee from contacting particular customers, competing in certain territories, or contacting former co-workers? If so, describe the measures considered or implemented, when Beacon Hill implemented the measures, when Beacon Hill stopped the measures, and who was involved in the decision to implement or not implement such measures.

- Interrogatory No. 6: Since January 1, 2014, how many times has Beacon Hill decided to hire an individual even though the individual is subject to a restrictive covenant agreement? For each individual, identify the individual, the individual's former employer and role, the agreement at issue, and any advice regarding the agreement's enforceability that Beacon Hill received from internal or outside counsel (if the advice was communicated to persons or entities other than Beacon Hill and its outside counsel).

- Interrogatory No. 7: Since January 1, 2014, identify every lawsuit where Beacon Hill was sued by a company where the company alleged that Beacon Hill tortiously interfered with a restrictive covenant agreement. For each lawsuit, identify the style, the claims asserted against Beacon Hill, and the outcome.

- Interrogatory No. 8: Identify every new office or line of business opened by Beacon Hill since January 1, 2014. For each, identify the first five employees hired, the first five employees' immediate prior employer, whether the employees had restrictive covenants, and whether Beacon Hill received a cease and desist letter from the five employees' immediate prior employer.

- Interrogatory No. 9: To the extent not otherwise produced, identify all communications involving one or more members of the Beacon Hill Management Team regarding Randstad's restrictive covenant agreements and/or Beacon Hill's efforts, if any, to comply with restrictive covenants. This request is limited to communications on or after January 1, 2014.

- Interrogatory No. 10: To the extent not otherwise produced, identify and describe all communications involving one or more members of the Beacon Hill Management Team regarding the response or course of conduct in response to a cease and desist letter received regarding an alleged violation of a restrictive covenant agreement.

- Interrogatory No. 11: Since January 1, 2014, is Beacon Hill aware of any instance where a Beacon Hill employee told or recommended that a future or new employee not change his or her LinkedIn profile to reflect that he or she was now employed by Beacon Hill? For each such instance, identify the

employees involved, the communication, any related documents, and the reason why the Beacon Hill employee told the new employee not to change his or her LinkedIn profile.

- Interrogatory No. 12: Identify ever agreement you entered into in connection with actual or potential litigation that included a no-hire provision, employee non-solicitation provision, or similar provision restricting your ability to hire or solicit for hire the employees of another staffing company.

- Interrogatory No. 13: Since April 1, 2019, describe in detail any action taken by Beacon Hill in response to a cease and desist letter Beacon Hill received from Randstad. This interrogatory excludes communications between Beacon Hill and outside counsel retained in connection with the subject matter of the communication.

First, the Court overrules Beacon Hill's numerosity objections.

"Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). "The Advisory Committee Note to Fed. R. Civ. P. 33 explains that a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication." *Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-cv-2408-P, 2013 WL 12124329, at *1 (N.D. Tex. Dec. 23, 2013) (cleaned up). "Courts have held that, when counting interrogatories, any subparts are to be counted as discrete subparts if they are not logically or factually subsumed within and necessarily related to the primary question. If the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within and necessarily related to the primary question." *Id.* at *2 (cleaned up).

Applying this test, the Court determines that Interrogatory Nos. 1-13 to Beacon Hill each count as only one interrogatory for Rule 33(a)(1)'s purposes.

"Once responses, answers, and objections have been served subject to [Federal Rule of Civil Procedure] 26(g), the party who has objected to a discovery request then must, in response to a Rule 37(a) motion to compel or in support of its own Federal Rule of Civil Procedure 26(c) motion for a protective order, urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection." *Lopez*, 327 F.R.D. at 583. And any objections that Beacon Hill or Wang raised for the first time in responding to the MTCs are untimely and waived. *See id.* at 582; *accord Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 586 (N.D. Tex. 2016).

To the extent that Beacon Hill or Wang objects that information responsive to an interrogatory is protected by attorney-client privilege or the work-product doctrine, including as extended by the joint defense or common interest doctrine or privilege, "[t]he scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) does not include privileged information or, absent the showing that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information." *Jolivet v. Compass Grp. USA*, No. 3:19-cv-2096-B, 2021 U.S. Dist. LEXIS 178116, at *16 *24-*34 (N.D. Tex. Sep. 14, 2021). But the answering party must comply with Federal Rule of Civil Procedure 26(b)(5) and serve a privilege log in support of any claim for withholding responsive information based on attorney-client privilege and work product protection. *See id.* at *24-*34. And a party

cannot, based only on the possibility that some responsive information may need to be withheld under Rule 26(b)(5), refuse to answer an interrogatory with all reasonably available nonprivileged information.

Insofar as Beacon Hill or Wang have raised confidentiality-related objections or concerns to any interrogatory or RFP, the Protective Order [Dkt. No. 87] that the Court entered in this case and the confidentiality designations that it authorizes provide sufficient protections for a party's concerns regarding any responsive documents or information that the responding or answering party must produce or provide. *See Samsung*, 321 F.R.D. at 292.

For the reasons explained above, the Court overrules Beacon Hill's objections to and GRANTS the MTC as to Interrogatory No. 2 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 2, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

As to Interrogatory Nos. 3 and 4, Beacon Hill does not appear to have complied with the requirements for a proper vagueness objection, and, in any event, Randstad's use of the word "measures" or phrase "adequate measures" is "certainly … not so vague or ambiguous as to be incapable of reasonable interpretation and to prohibit" Beacon Hill from answering. *Heller*, 303 F.R.D. at 492. For the reasons explained above, the Court overrules Beacon Hill's objections to and GRANTS the MTC as to Interrogatory Nos. 3 and 4 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory Nos. 3 and 4, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

For the reasons explained above, the Court overrules Beacon Hill's objections to and GRANTS the MTC as to Interrogatory No. 5 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 5, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

For the reasons explained above, the Court overrules Beacon Hill's objections to Interrogatory No. 6 except for its objection that the interrogatory should be limited to Randstad employees and otherwise GRANTS the MTC as to Interrogatory No. 6 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 6, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, for every Randstad General Staffing or Randstad Technologies employee that it has hired since January 1, 2014.

For the reasons explained above, the Court overrules Beacon Hill's objections to and – because each seeks information relevant to Randstad's pleaded claims and proportional to the needs of the case – GRANTS the MTC as to Interrogatory Nos. 7 and 8 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory Nos. 7 and 8, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

The Court determines that Interrogatory Nos. 9, 10, 12, and 13 are, as Beacon Hill objects, facially overbroad and determines that, even if limited to communications as to Randstad's restrictive covenants or cease and desist letters from Randstad, these interrogatories are not proportional to the needs of the case. The Court sustains Beacon Hill's objections under Rule 26(b)(1) and DENIES the

MTC as to Interrogatory Nos. 9, 10, 12, and 13 and grants Beacon Hill a protective order relieving it of any further obligation to answer or respond to these interrogatories.

For the reasons explained above, the Court overrules Beacon Hill's objections to Interrogatory No. 11 except for its objection that the interrogatory should be limited to Randstad employees and otherwise GRANTS the MTC as to Interrogatory No. 11 and ORDERS Beacon Hill to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 11, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, for every Randstad General Staffing or Randstad Technologies employee that it has hired since January 1, 2014.

### D. Interrogatory Nos. 1-14 to Wang

In these interrogatories, Randstad asks Wang to answer the following:

- Interrogatory No. 1: Describe in detail your role in Beacon Hill's hiring process.
- Interrogatory No. 2: Has Beacon Hill, at any point since January 1, 2014, considered or implemented measures to screen whether candidates for employment with Beacon Hill are subject to an agreement that contains restrictive covenants? If so, describe the measures considered or implemented, when Beacon Hill implemented the measures, when Beacon Hill stopped the measures, whether the measures were limited to a particular division of Beacon Hill, and who was involved in the decision to implement or not implement such measures.
- Interrogatory No. 3: Describe in detail any measures that Beacon Hill takes to avoid hiring employees in a role that violates a restrictive covenant agreement. For each such measure, describe when Beacon Hill implemented the measure, if/when Beacon Hill stopped the measure, whether the measure is limited to a particular division of Beacon Hill, and the individuals involved in the decision to implement the measure.
- Interrogatory No. 4: Do you contend that Beacon Hill takes adequate measures to avoid violating restrictive covenant agreements? If so, identify the facts that support your contention.

- Interrogatory No. 5: Has Beacon Hill, at any point since January 1, 2014, considered or implemented measures to screen an employee from contacting particular customers, competing in certain territories, or contacting former co-workers? If so, describe the measures considered or implemented, when Beacon Hill implemented the measures, when Beacon Hill stopped the measures, and who was involved in the decision to implement or not implement such measures.
- Interrogatory No. 6: Since January 1, 2014, how many times has Beacon Hill decided to hire an individual even though the individual is subject to a restrictive covenant agreement? For each individual, identify the individual, the individual's former employer and role, the agreement at issue, and any advice regarding the agreement's enforceability that Beacon Hill received from internal or outside counsel (if the advice was communicated to persons or entities other than Beacon Hill and its outside counsel).
- Interrogatory No. 7: To the extent not otherwise produced, identify all communications between you and any other member of the Beacon Hill Management Team regarding Randstad's restrictive covenant agreements and/or Beacon Hill's efforts, if any, to comply with restrictive covenants. This request is limited to communications on or after January 1, 2014.
- Interrogatory No. 8: Identify whether you disagree that Beacon Hill has been sued a disproportionate number of times relative to its size and workforce and describe in detail the basis for your answer.
- Interrogatory No. 9: Excluding conversations with Beacon Hill's counsel, have you rejected any recommendations from any entity to take measures to prevent Beacon Hill from violating restrictive covenants? If so, please describe the recommendations, the date you received the recommendations, and why you rejected them.
- Interrogatory No. 10: To the extent not otherwise produced, identify and describe all communications involving one or more members of the Beacon Hill Management Team regarding the response or course of conduct in response to a cease and desist letter received regarding an alleged violation of a restrictive covenant agreement.
- Interrogatory No. 11: Describe your opinion, philosophy, or perspective about restrictive covenants, including your understanding of the difference between non-competes and nonsolicits, whether you believe that employees may be restricted from competing in a specified territory, and whether you believe that employees at staffing companies obtain customer relationships or confidential information through their employment.
- Interrogatory No. 12: Since January 1, 2014, are you aware of any instance where a Beacon Hill employee told or recommended that a future or new employee not change his or her LinkedIn profile to reflect that he or she was now employed by Beacon Hill? For each such instance, identify the employees involved, the communication, any related documents, and the reason why the

-34-

Beacon Hill employee told the new employee to not change his or her LinkedIn profile.

- Interrogatory No. 13: Describe in detail your role in Beacon Hill's hiring of Shauna Mooney.
- Interrogatory No. 14: Identify every individual who you believe has knowledge relevant to the issues presented in this litigation. For each such individual, provide their name, contact information, and a brief summary of the information that such individual has or may have.

First, the Court overrules Wang's objections that an interrogatory "seeks information from Beacon Hill that Mr. Wang may not know." Wang "is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him." *Lopez*, 327 F.R.D. at 579.

Second, the Court overrules Wang's numerosity objections. Applying the test laid out above, the Court determines that Interrogatory Nos. 1-14 to Wang each count as only one interrogatory for Rule 33(a)(1)'s purposes.

For the reasons explained above, the Court overrules Wang's objections to and GRANTS the MTC as to Interrogatory Nos. 1, 2, and 3 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory Nos. 1, 2, and 3, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

As to Interrogatory No. 4, Wang does not appear to have complied with the requirements for a proper vague and ambiguous objection, and, in any event, Randstad's use of the phrases "adequate measures" and "restrictive covenant agreements" is "certainly … not so vague or ambiguous as to be incapable of

reasonable interpretation and to prohibit" Wang from answering. *Heller*, 303 F.R.D. at 492. For the reasons explained above, the Court overrules Wang's objections to and GRANTS the MTC as to Interrogatory No. 4 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 4, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

For the reasons explained above, the Court overrules Wang's objections to and GRANTS the MTC as to Interrogatory Nos. 5, 9, 11, 13, and 14 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory Nos. 5, 9, 11, 13, and 14 consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80.

For the reasons explained above, the Court overrules Wang's objections to Interrogatory No. 6 except for his objection that the interrogatory should be limited to Randstad employees and otherwise GRANTS the MTC as to Interrogatory No. 6 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 6, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, for every Randstad General Staffing or Randstad Technologies employee that Beacon Hill has hired since January 1, 2014.

The Court determines that Interrogatory Nos. 7 and 10 are, as Wang objects, facially overbroad and determines that, even if limited to communications as to Randstad's restrictive covenants or cease and desist letters from Randstad, they are not proportional to the needs of the case. The Court sustains Wang's objections under Rule 26(b)(1) and DENIES the MTC as to Interrogatory Nos. 7 and 10 and

grants Wang a protective order relieving him of any further obligation to answer or respond to these interrogatories.

For the reasons explained above, the Court overrules Wang's objections to Interrogatory No. 8 except that the interrogatory should be limited to lawsuits in which a party alleged that Beacon Hill tortiously interfered with a restrictive covenant agreement and otherwise GRANTS the MTC as to Interrogatory No. 8 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 8, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, with the limitation explained above.

For the reasons explained above, the Court overrules Wang's objections to Interrogatory No. 12 except for his objection that the interrogatory should be limited to Randstad employees and otherwise GRANTS the MTC as to Interrogatory No. 12 and ORDERS Wang to, by **October 8, 2021**, serve a complete answer to Interrogatory No. 12, consistent with Rule 33's governing standards, *see Lopez*, 327 F.R.D. at 578-80, for every Randstad General Staffing or Randstad Technologies employee that it has hired since January 1, 2014.

## V. RFPs to Beacon Hill and Wang

### A. RFP Nos. 15 & 16 to Beacon Hill and RFP Nos. 7 & 8 to Wang

In RFP Nos. 15 and 16, Randstad asks Beacon Hill to produce "[a]ll interrogatory answers provided by Beacon Hill in any litigation where a party asserted a claim for tortious interference with a contract or misappropriation of trade secrets against Beacon Hill since January 1, 2010" and "[a]ll depositions of

Beacon Hill employees or corporate representatives in any litigation where a party asserted a claim for tortious interference with a contract or misappropriation of trade secrets against Beacon Hill since January 1, 2010."

In RFP Nos. 7 and 8, Randstad asks Wang to produce "[a] copy of any interrogatory answers you have verified on behalf of Beacon Hill" and "[a] copy of any deposition transcript where you were deposed in your individual capacity or in your capacity as the corporate representative of Beacon Hill."

These facially overbroad requests are not proportional to the needs of the case and fall on the wrong side of the line of prohibited fishing expeditions. The Court is not persuaded that Randstad needs to obtain copies of discovery answers or deposition testimony from other cases, even if they involve allegations similar to Randstad's here (although these requests, as served, are not so limited), because – if this is Randstad's motivation – Randstad cannot trust Beacon Hill or Wang to comply with their discovery obligations to produce responsive documents or fully answer substantive interrogatories or deposition questions in this case.

The Court DENIES the MTC as to RFP Nos. 15 and 16 to Beacon Hill and RFP Nos. 7 and 8 to Wang and grants Beacon Hill and Wang a protective order relieving them of any further obligation to respond to these requests.

**B. RFP Nos. 17 & 25 to Beacon Hill and RFP No. 12 to Wang**

In RFP Nos. 17 and 25, Randstad asks Beacon Hill to produce "[a]ll settlement agreements in any litigation where a party asserted a claim for tortious interference with a contract or misappropriation of trade secrets against Beacon Hill since

January 1, 2010" and "[a]ll documents and communications regarding Beacon Hill's acceptance and/or implementation of any no-hire or employee non-solicitation provision in a settlement agreement or other agreement ancillary to the resolution of actual or potential litigation," "limited to no-hire agreements implemented on or after January 1, 2010." RFP No. 12 to Wang mirrors RFP No. 25 to Beacon Hill.

Randstad contends that "[t]he Court should also order Beacon Hill to produce its settlement agreements for lawsuits involving restrictive covenant violations, as well as documents and communications concerning Beacon Hill's agreement and implementation of any no-hire or employee non-solicitation," because "these requests are relevant and discoverable" where "Randstad contends that Beacon Hill views restrictive covenant litigation as a cost of doing business and that Beacon Hill could, but has not, implemented the appropriate review processes to avoid routinely hiring and employing employees in violations of restrictive covenant agreements agreement" and "that Beacon Hill either intentionally interferes with or willfully ignores restrictive covenants," such that "[t]he terms, including value, of Beacon Hill's settlements are relevant to Beacon Hill's litigation activity and the relative value of settlement compared to gaining market share and Beacon Hill's tactics of secretly and quietly settling out dozens of restrictive covenant cases and disputes goes to Beacon Hill's intent, motive, and continuous course of reckless conduct." Dkt. No. 91-1 at 17-18.

The Court is persuaded that, whatever marginal relevance these requested documents and communications from other litigation may have for Randstad's

claims here, the discovery that Randstad seeks through these two requests is not proportional to the needs of the case, considering the importance of the issues at stake in the action and particularly the relatively marginal importance – as explained by Randstad – of this discovery in resolving the issues, as well as the burden and expense involved in this proposed discovery (some of it involving protective orders entered in other case) outweighs its likely benefit.

The Court denies the MTCs as to RFP Nos. 17 and 25 to Beacon Hill and as to RFP No. 12 to Wang and grants Beacon Hill and Wang a protective order relieving it of any further obligation to respond to these requests.

### C. The other RFPs to Beacon Hill and Wang

In the MTCs, Randstad otherwise asserts, as to Beacon Hill's and Wang's responses to Randstad's RFPs, that "[o]ther than reproducing a handful of documents produced in other litigation, Beacon Hill generally refuses to produce any documents in response to Randstad's RFPs, and the company does little more than assert the same generic objections that it made in response to Randstad's interrogatories," and that "Wang refuses to produce any documents in response to Randstad's RFPs, and he does little more than assert the same generic objections that he made in response to Randstad's interrogatories." Dkt. No. 89-1 at 14; Dkt. No. 91-1 at 13. According to Randstad, in the face of Wang's responses, "it is hard to conceive how Randstad could be much more specific in its bases for moving to compel beyond pointing to the responses and their clear departures from this Court's prior decisions about appropriate discovery practices." Dkt. No. 103 at 9. And Randstad

-40-

argues that, because, in its RFP responses, "Beacon Hill alternates between refusing to produce documents entirely and stating that it will produce at some unknown date only documents related to the four Texas hires," "it is hard to conceive how Randstad could be much more specific in its bases for moving to compel beyond pointing to the responses and their clear departures from this Court's prior decisions about appropriate discovery practices – particularly when Beacon Hill continued to insist on an artificial and inappropriate scope limitation." Dkt. No. 104 at 9.

Randstad served 13 RFPs on Wang and 30 RFPs on Beacon Hill. The Court has already addressed RFP Nos. 15, 16, 17, and 25 to Beacon Hill and RFP Nos. 7, 8, and 12 to Wang.

For the reasons explained above, the Court overrules Beacon Hill's and Wang's objections related to scope of Randstad's claims or temporal scope, except insofar as the Court further limits a specific RFP response, and rejects Beacon Hill's and Wang's arguments that the "Court's consideration should be limited to … Interrogatory Nos. 1-11, 13 and [RFP] Nos. 15-17, 25 to Beacon Hill and Interrogatory Numbers 2-14 and [RFP Nos.] 7 and 8 to Wang." Dkt. No. 99 at 11; Dkt. No. 101 at 11.

To the extent that Beacon Hill or Wang objects that documents responsive to a RFP are protected by attorney-client privilege or the work-product doctrine, including as extended by the joint defense or common interest doctrine or privilege, as explained above, The scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) does not include privileged information or, absent the showing

that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information." *Jolivet*, 2021 U.S. Dist. LEXIS 178116, at *16. But the responding party must comply with Rule 26(b)(5) and serve a privilege log in support of any claim for withholding responsive information based on attorney-client privilege and work product protection. *See id.* at *24-*34. And the responding party cannot, based only on the possibility that some responsive documents may need to be withheld under Rule 26(b)(5), refuse to respond to, or produce nonprivileged documents or portions of documents that are responsive to, a RFP at all.

And the Court agrees with Randstad's assessment that Beacon Hill's and Wang's RFP responses fail to comply with Federal Rule of Civil Procedure 34(b)(2)(C)'s requirements, including by stating whether any responsive materials are being withheld. "General or boilerplate objections are invalid, and [o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." *Lopez*, 327 F.R.D. at 578 (cleaned up) (quoting quoting FED. R. CIV. P. 34(b)(2)(C)).

And the Court overrules Wang's vague or ambiguous objections to RFP Nos. 1, 2, 3, 5, and 9 and any objection based on Beacon Hill's or Wang's having already

produced documents, answered Rule 36 requests for admission, or otherwise answered discovery or obtained certain discovery rulings in the Georgia Case.

Based on these rulings, and the Court's review of the RFPs and responses and objections, the Court GRANTS the MTC as to RFP Nos. 1, 2, 3, 4, 5, 6, 9, 11, and 13 to Wang and orders Wang to, by **October 8, 2021**, serve complete responses (without objections) to RFP Nos. 1, 2, 3, 4, 5, 6, 9, 11, and 13 and produce all unproduced documents and electronically stored information that are responsive to RFP Nos. 1, 2, 3, 4, 5, 6, 9, 11, and 13 and that are in Wang's possession, custody, or control, in compliance with Federal Rule of Civil Procedure 34(b)'s requirements – except that RFP No. 2 is limited to the requested matters as to only actual or potential restrictive covenant litigation by or against Randstad; RFP Nos. 3 and 6 are limited to every Randstad General Staffing or Randstad Technologies employee that Beacon Hill has hired since January 1, 2014; and RFP No. 9 is limited to documents sent by Beacon Hill to someone outside the organization. *See Lopez*, 327 F.R.D. at 575-79

The Court determines that RFP No. 10 to Wang is, as Wang each objects, facially overbroad and determines that it is not proportional to the needs of the case. The Court sustains Wang's objections under Rule 26(b)(1) and DENIES the MTC as to RFP No. 10 and grants Wang a protective order relieving him of any further obligation to answer or respond to this request.

The Court overrules Beacon Hill's vague or ambiguous objections to RFP Nos. 2, 3, 4, 5, 6, 7, 8, 20, and 21 and any objection based on Beacon Hill's or Wang's

having already produced documents, answered Rule 36 requests for admission, or otherwise answered discovery or obtained certain discovery rulings in the Georgia Case.

Based on these rulings, and the Court's review of the RFPs and responses and objections, the Court GRANTS the MTC as to Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 20, 21, 22, 23, 24, 26, 27, 28, 29, and 30 to Beacon Hill and orders Beacon Hill to, by **October 8, 2021**, serve complete responses (without objections) to RFP Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 20, 21, 22, 23, 24, 26, 27, 28, 29, and 30 and produce all unproduced documents and electronically stored information that are responsive to RFP Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 20, 21, 22, 23, 24, 26, 27, 28, 29, and 30 and that are in Beacon Hill's possession, custody, or control, in compliance with Federal Rule of Civil Procedure 34(b)'s requirements – except that RFP No. 2 is limited to the requested matters as to only actual or potential restrictive covenant litigation by or against Randstad; RFP Nos. 3, 4, 5, 6, 8, 14, 20, and 21 are limited to every Randstad General Staffing or Randstad Technologies employee that Beacon Hill has hired since January 1, 2014; RFP No. 13 is limited to documents relating to or discussing lateral hiring strategy or restrictive covenants; and RFP No. 18 is limited to documents sent by Beacon Hill to someone outside the organization. *See Lopez*, 327 F.R.D. at 575-79

The Court determines that RFP No. 1 to Beacon Hill, seeking personnel files and related documents, is not proportional to the needs of the case. The Court sustains Beacon Hill's objections under Rule 26(b)(1) and DENIES the MTC as to

RFP No. 1 and grants Beacon Hill a protective order relieving him of any further obligation to answer or respond to this request.

The Court determines that RFP No. 19 to Beacon Hill is, as Beacon Hill objects, facially overbroad and determines that it is not proportional to the needs of the case. The Court sustains Beacon Hill's objections under Rule 26(b)(1) and DENIES the MTC as to RFP No. 19 and grants Beacon Hill a protective order relieving it of any further obligation to answer or respond to this request.

## VI.   Award of reasonable expenses

Finally, the Court finds that, under Federal Rule of Civil Procedure 37(a)(5)(C), considering all of the circumstances here and the Court's rulings, the parties will bear their own expenses, including attorneys' fees, in connection with these MTCs. The Court cannot agree that all of Beacon Hill's and Wang's discovery responses and objections and positions in opposition to the MTCs lack substantial justification. And, even if Randstad is correct that they "are part and parcel of Defendants' ongoing and systematic efforts to stonewall discovery for almost the entire discovery period," an award apportioning expenses is not warranted under Rule 37(a)(5)(C) under these circumstances.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Against Defendant Andrew Wang [Dkt. No. 89] and Plaintiffs' Motion to Compel Against Defendant Beacon Hill Staffing Group, LLC [Dkt. No. 91].

SO ORDERED.

DATED: September 23, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE